WILLIAM LAMMARS, Appellee, v. CHICAGO, GREAT WESTERN RAILROAD COMPANY, Appellant.

Railways: FELLOW SERVANT RULE: STATUTE: CONSTRUCTION: NEG-
LIGENCE: EVIDENCE. Code Section 2071, relating to injuries received by a railway employee caused by the negligence of a co-employee, when such negligence was in any manner connected with the use and operation of the railroad, applies only to injuries received when exposed to the hazards of moving trains and machinery on the tracks, and caused by the negligence of a co-employee in the actual movement thereof. Thus a section hand, whose work was along the section putting in rails and repairing the track, and who was injured by the falling of a steel rail from the side of a standing car while assisting in unloading the rails, because of inability of the foreman to hold the rail, does not come within the statute: the terms ''use and operation'' as found in the statute being restricted to moving trains. Under the evidence in the case the question of the foreman's negligence was for the jury.

*Appeal from Dubuque District Court.*—HON. ROBERT BON-
SON, Judge.

THURSDAY, NOVEMBER 20, 1913.

ACTION to recover damages for injuries received by plaintiff while unloading rails from a car. The facts are more fully stated in the opinion. Trial to a jury. Verdict and judgment for plaintiff. Defendant appeals.—*Reversed*.

· · *Carr, Carr & Evans,* for appellant.

*Fitzpatrick & Frantzen,* for appellee.

PRESTON, J.—The undisputed, or established facts are, substantially: That plaintiff was in the employ of the defendant as a member of the section crew at Dyersville, Iowa. Frank Dodds was foreman of the crew. On the morning of plaintiff's injury these men were working in the yard at Dyersville when they received orders to unload steel rails from a car in a train which had just arrived. There were four men in the crew in addition to the foreman. Plaintiff's work was along the section, track repairing, putting in rails, and work of that kind. He had nothing to do with running the train. The foreman had orders to distribute the rails at points needed, for repairing the track, and had points marked out where they should be distributed. The section men were directed by Dodds to get on the car and unload the rails. When the train moved to a point where a rail was needed, Dodds would tell the conductor, who would signal the engineer to stop the train. The rails which were to be unloaded, in connection with which work the plaintiff was injured, were loaded in a gondola car, on which there were sideboards about four feet high, constructed of two-inch plank. No work of unloading the rails was done while the train was in motion. The section men remained on the car when the train was moved from one stop to another. The train had made six or seven stops for the purpose of unloading rails, after leaving Dyersville, and had reached a point about four and one-half miles west of the town, when a stop was made to unload more rails, and where plaintiff was hurt.

The rails were unloaded from the car one at a time by the section men in the following manner: One end of the rail would be lifted above the side of the car, when one of the members of the crew would put a bar under the rail and over the top of the sideboard upon the car and hold it there, while

the other men went to the opposite end of the rail to lift it
up, and, when lifted, it would be rolled over the side of the
car to the ground.  At the time of the plaintiff's injury, six-
teen or seventeen rails had been unloaded in this manner at
different places.  The train was stopped, and the section men
started to unload a rail by lifting the west end of it up to the
south side of the car.  Dodds, the foreman, then put the bar
under it, and the other men started for the other end.  When
the plaintiff had gone about two steps east, the rail came
down.  After the bar had been placed under it and the men
had started east, Dodds, who was holding the bar which
supported the rail, fearing that it was not over the side of
the car far enough to hold it, attempted to push it through
further, and it slipped on the bar and slid down where he
could not hold it, and it fell upon the plaintiff's leg and in-
jured him.

At the conclusion of all the evidence, the defendant
moved the court to direct a verdict upon the grounds: First,
that there was no negligence on the part of defendant
shown; and, second, if there was any negligence which
caused the plaintiff's injury, it was the negligence of his fel-
low servant, for which he could not recover of the defendant.
The motion was overruled and the cause submitted to a jury
which found for plaintiff.

Appellant contends that plaintiff and Dodds being fel-
low servants, in the work of unloading the rails from the
car, plaintiff is not entitled to recover for the negligence of
Dodds unless plaintiff's employment and the negligence, if
any, on the part of Dodds, comes within the provision of
section 2071 of the Code; and that the negligence, if any,
on the part of Dodds is not connected with the use and oper-
ation of a railway, within the meaning of said section, the
precise point being that at the time plaintiff was injured
neither he nor his co-employe, Dodds, of whose wrong and
negligence plaintiff complains, were engaged in work which
exposed plaintiff to the hazards of moving trains, machinery,
etc., on the track, or in any manner connected with such
movement, and that therefore the statute does not apply to

the case-made.   This is really the point in the case, and substantially the only one.

Our cases are not entirely harmonious on this question. The rule seems to have been settled, but the facts in each case make it difficult, sometimes, to apply the rule.   In *Akeson v. Railway*, 106 Iowa, 54, Mr. Justice Ladd, speaking for the court, after quoting the statute, said that: "In argument nearly all of the authorities construing the statute set out are reviewed, and it is respectively contended that, under previous decisions, this case falls within and without its purview.   For the purpose of determining this controversy, and in order to deduce a rule, if possible, in harmony with the meaning of the Legislature, we shall consider somewhat in detail what has heretofore been said in construing this statute."

The decisions of our own court up to that time were reviewed, and those in some other jurisdictions.   The change in the statute under which the earlier cases were decided was pointed out.   The constitutional objections to the statute, unless limited to employees engaged in the hazards of operating railroads, were discussed.   It was shown that, with one exception, a recovery has not been permitted in any case in this state where the wrongful act causing the injury was not occasioned by the actual movement of trains, cars, or machinery on the track (or in connection therewith), but that the holdings in numerous cases were that, although the complainant was engaged in (other) railroad work, recovery was not allowed.   The exception referred to is that of *Smith v. Railway*, 78 Iowa, 583, where it was held that, under the facts there shown, plaintiff was injured while engaged in work connected with the movement of the train and therefore within the statute.   After considering all these cases, the rule was announced as follows: "If, then, the injury is received by an employee whose work exposes him to the hazards of moving trains, cars, engines, or machinery on the track, and is caused by the negligence of a co-employee in the actual

movement thereof, or in any manner directly connected therewith, the statute applies, and recovery may be had. Beyond this the statute affords no protection.'' The opinion further says that the peculiarity of the railroad business, which distinguishes it from any other, is the movement of vehicles or machinery of great weight on the track, by steam or other power, and the dangers incident to such movement are those the statute was intended to guard against. That holding has not been changed in any of our later cases, but has been re-affirmed. It is the rule generally adopted in other jurisdictions having a similar statute. 26 Cyc. 1370 (B); 18 L. R. A. (N. S.) 478, note.

Having announced the rule and adhered to it, it should not be departed from unless there are weighty and sufficient reasons for doing so. It is not meant by this that we are to blindly follow precedent in all cases, but there ought to be stability in the decisions in order that the profession and litigants may know what the rules are. We are content with the rule laid down in the *Akeson* case, and shall not again review the cases prior to that decision or repeat the reasons therefor. The Iowa cases on this subject, decided since that case, to which our attention has been called, and where a recovery was permitted, are: *Jensen v. Railway,* 115 Iowa, 404; *Stebbins v. Railway,* 116 Iowa, 513; *Williams v. Railway,* 121 Iowa, 271; *Cahill v. Railway,* 148 Iowa, 241; *Russell v. Railway,* 141 N. W. 1079.

In all those cases the injury was in some manner connected with the movement of trains or machinery. In the following cases, decided since the *Akeson* case, no recovery was permitted: *Reddington v. Railway,* 108 Iowa, 96; *Dunn v. Railway,* 130 Iowa, 580; *Slaats v. Railway,* 149 Iowa, 735. In the *Reddington* case and the *Slaats* case the holding in *Akeson v. Railway* was approved, although in the *Slaats* case Mr. Justice Weaver in his dissent was of opinion that the facts brought that case within the holdings of prior decisions. There are numerous cases in other states under statutes sim-

ilar to, but not exactly like, ours, where the question has arisen whether loading or unloading cars is an operation of the railroad within the meaning of the statute. In some cases it has been held that such employment is within the contemplation of the statute. *Atchison Railroad v. Koehler,* 37 Kan. 463 (15 Pac. 567) ; *Atchison Railroad v. Brassfield,* 51 Kan. 167 (32 Pac. 814) ; *Chicago, etc., Ry. v. Pontius,* 157 U. S. 209 (15 Sup. Ct. 585, 39 L. Ed. 675). These cases were decided under the Kansas statute which is substantially the same as the Iowa statute of 1862 (Laws 1862, chapter 169), before it was changed, and is broader than our present statute. The Kansas statute is set out in the *Pontius* case, *supra.* In *Daley v. Railway,* 147 Mass. 101 (16 N. E. 690), a person injured was engaged in unloading merchandise from a vessel and loading it on cars of defendant. A recovery was permitted, but the material inquiry was whether he was in the employ of the defendant. The court held that, under the wording of the Massachusetts statute, the words ''operating a railroad'' describes the kind of a corporation intended to be subjected to the liability there imposed, and not the work immediately in the process of performance by it. In the following cases a recovery was had where the person injured was engaged in loading or unloading cars: *Orendorf v. Terminal Ass'n,* 116 Mo. App. 348 (92 S. W. 148) ; *St. Louis, etc., Ry. v. Thornton,* 46 Tex. Civ. App. 649 (103 S. W. 437) ; *Leier v. Railway,* 63 Minn. 203 (65 N. W. 269).

But in each of these the cause of the injury was the movement of cars or machinery, such as being struck by a moving train, or the sudden starting or stopping of the car, and the like. Cases to the contrary, where the injuries were not connected with the movement or operation of cars, etc., and which were held to not come within the statute, are: *Lawrence v. Railway,* 25 Tex. Civ. App. 293 (61 S. W. 342), where it was held that merely unloading ties from a car set out on a side track is not ''operating a car,'' under the Texas law. Nor taking steel from a hand car. *Lakey v. Railway,* 33 Tex. Civ.

App. 44 (75 S. W. 566).   One unloading lumber from a car
standing on a switch is not "operating cars, locomotives, or
trains."   *Walker v. Railway*, 51 Tex. Civ. App. 391 (112 S.
W. 430).   One loading ice into a car, and injured by a piece
of ice falling upon him, through the negligence of a fellow
employee is not operating a car.   *Beleal v. Railway*, 15 N. D.
318 (108 N. W. 33, 11 Ann. Cas. 921).   Construing the Iowa
statute, where the injury occurred in Iowa, the Supreme Court
of Missouri held that the statute did not apply where the
injuries were received while loading a standing car with bridge
iron.   *Williams v. Railway*, 106 Mo. App. 61 (79 S. W. 1167).
Many cases are cited in note to 18 L. R. A. (N. S.) 479, where
such statutes are discussed in regard to repairing tracks, work
in depots, roundhouses, etc.   In some of the later Minnesota
cases a new feature was developed called the "element of
haste," where work was required to be hastily done in order
to allow trains to pass in safety.   Under such circumstances
it was held to be a question of fact whether the work involved
an element of hazard peculiar to railroad business.   *Hanson
v. Railway*, 108 Minn. 94 (121 N. W. 607, 22 L. R. A. (N.
S.) 968).   See, also, *Meo v. Railway*, 138 Wis. 340 (120 N. W.
344).   But there is no question of that kind in the case at
bar, and as there is no dispute in the evidence, we have a law
question only.   *Dunn v. Railway*, 130 Iowa, 580, 585.   In
*Indianapolis Traction Company v. Kinney*, 171 Ind. 612 (85
N. E. 954, 23 L. R. A. (N. S.) 711), the facts were quite sim-
ilar to the facts in the present case, except that in that case
the corporation was a street car company, which, under the
decisions of the Indiana courts, is included in such statutes as
we are now considering.   In that case, one engaged as a
laborer to do service with the repair and construction gang
of a street car company was not, while engaged in unloading
rails from a flat car standing on a siding of the street car
tracks, exposed to any of the peculiar hazards of using or
operating a railroad within the protection of the statute.   He
was injured by the slipping of a skid used to unload the car,

and the court held that the skid might have slipped if negligently placed from a standing wagon with precisely the same result.  The clause last quoted seems to be one of the tests. In *Hanson v. Railway*, 108 Minn. 94 (121 N. W. 607, 22 L. R. A. (N. S.) 968), we find this language:  ''The distinction is not in the character of the work, but in the manner in which it is conducted.  Where the same class of work may be naturally carried on at any other place, by the employees of any other master, and there is nothing intimately connecting the work with the movement of engines, cars, or trains, then the dangers peculiar to railroading are absent.  But, if the work is being conducted with reference to the movement of engines or cars, then an element of danger is introduced, not common to other employments.''  It has been many times held that the purpose of this statute was not to favor a class, but as a protection to employees exposed to the peculiar hazards connected in some manner with the use and operation of railroads.  A railroad upon which no engines or cars are run would not be in use or operation.  The words ''use'' and ''operation'' are broad, and may be used in many senses.  In one sense everything a railroad corporation does is in some manner connected with the use and operation of its railroad, but all employees engaged in such use and operation are not exposed to the dangers of railroading.

In this case if plaintiff had been injured by a collision, or by a jerk or sudden stopping of the train, or some other wrongful or negligent act of an employee in the movement of the train, or in any manner directly connected therewith, he would come within the protection of the statute.  He had nothing to do with the movement of the train, nor did the section foreman.  It is true the foreman did tell the train crew where he needed the rails, but the train was under the control of the train crew.  Nor was plaintiff injured by reason of any railroad hazard.  The accident could have happened in the same manner had he been in the employ of a farmer, moving rails or any heavy object from a platform having sideboards, or a wagon, twenty-five miles from a railroad.

Under the undisputed evidence as now presented on this appeal, we are of the opinion that plaintiff's case does not come within the protection of the statute.    Other questions are argued, but in view of the conclusion reached it is unnecessary to discuss them.

Whether the act of Dodds was negligent was for the jury. The pleading was broad enough to include such act where the trial seems to have been had on that theory, and an instruction, asked by defendant, based upon such theory, was given by the court.

The judgment is *Reversed* and the cause *Remanded*.

DEEMER, LADD, WITHROW, and GAYNOR, JJ., concur. EVANS, J., takes no part.

WEAVER, C. J. (dissenting).—For reasons sufficiently stated by me in *Dunn v. Railroad*, 130 Iowa, 580, and *Slaats v. Railroad*, 149 Iowa, 375, I cannot concur in the foregoing opinion.